## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

KEVIN L. BLAKE,

     Plaintiff,

v.                               Case No.  3:23-cv-399-BJD-MCR

E.S. YOUNG, et al.,

     Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Kevin L. Blake, an inmate in the custody of the Florida Department of Corrections, initiated this action in the Southern District of Florida by filing a pro se Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983. He is proceeding *in forma pauperis* on a Second Amended Complaint. Doc. 19. Nine Defendants remain – E.S. Young; R. Covey; W. Shomp; T. Allen; R. Reagor; Sergeant Fowler; John Doe; K. Price; and S. Carlan.[1] *Id.* at 2-3; Doc. 19-1 at 1-2. Plaintiff alleges claims of excessive force and failure to intervene.

Before the Court is Defendants Young, Price, Covey, Carlan, Fowler, Allen, Reagor, and Shamp's Motion to Dismiss (Doc. 25; Motion), with exhibits

_____

[1] The Court dismissed without prejudice Plaintiff's claims against E. Borrero and J. Shumate. *See* Doc. 21.

(Docs. 25-1, 25-2), and Defendants Supplemental Motion to Dismiss (Doc. 34; Supplemental Motion). The Court advised Plaintiff that granting a motion to dismiss would be an adjudication of the claim that could foreclose any subsequent litigation and provided Plaintiff with an opportunity to respond. *See* Order (Doc. 22). Plaintiff filed a Response in opposition to the Motion.[2] *See* Doc. 26. Thus, the motions are ripe for the Court's review.

## II. Motion to Dismiss Standard

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

---

[2] Plaintiff did not file a response to Defendants' Supplemental Motion, however, considering Defendants' delay in filing the Supplement and because it lacks merit, the Court finds a response is unnecessary.

## II. Plaintiff's Allegations

Plaintiff alleges that on November 14, 2022, while housed at Florida State Prison, Shumate and Defendant Price advised Plaintiff he was being placed on property restriction. Doc. 19-1 at 2-3. When he asked why, Shumate responded that he did not know why officers placed Plaintiff on property restriction. *Id.* at 3. Plaintiff alleges Borrero then inventoried Plaintiff's personal property while it was removed from his cell. *Id.* at 3. Plaintiff claims that following the removal of his property, Defendant Price held the shield while Lieutenant D.G. Philbert sprayed three rounds of chemical agents into Plaintiff's cell, causing Plaintiff to suffer severe burning of the skin and eyes. *Id.* After Plaintiff refused to exit his cell, a five-man cell extraction team, which consisted of Defendants Shomp, Fowler, Reagor, Allen, and John Doe, was assembled. *Id.* He asserts that when the cell extraction team entered his cell, Shomp and Fowler struck Plaintiff in the face and head several times while the other team members "hit him all over his body and legs." *Id.* According to Plaintiff, he began screaming "I'm not resisting. I'm trying to roll over. I'm trying to put my hands behind my back but you won't let me." *Id.* He asserts he was trying to comply throughout the interaction, but Defendants hindered his efforts. *Id.* He contends that Shomp then choked him "into silence" while Fowler smashed the left side of his face into the floor, causing a deep laceration above Plaintiff's left eye. *Id.*

Plaintiff alleges that during the cell extraction, Defendants Young and Covey stood to the side of Plaintiff's cell door and failed to intervene, and Defendant Carlan obscured the handheld camera footage to hinder the recording of the cell extraction. *Id.* at 3-4. According to Plaintiff, Defendants then escorted him to a decontamination shower where Shomp and Fowler "smashed" Plaintiff's head into the wall and choked him while Young again stood by and failed to intervene. *Id.* Plaintiff alleges he received nine stitches to close the laceration above his left eye, which has now scarred, and he received Dermabond to close another small cut on his face. *Id.* at 4. He also contends that the use of force resulted in several scars on his arms and shoulders. *Id.* at 5. He claims Defendants' participation and failure to intervene in the use of excessive force violated his rights under the Eighth Amendment. Doc. 19 at 3. As relief, Plaintiff requests compensatory and punitive damages. *Id.* at 5.

### III. Defendants' Motion to Dismiss

In their Motion, Defendants argue that: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff is not entitled to compensatory damages; (3) Plaintiff is not entitled to punitive damages; (4) Plaintiff fails to state a plausible Eighth Amendment claim against them; and (5) they are entitled to qualified immunity. *See generally* Motion.

4

*Exhaustion*

Defendants argue Plaintiff failed to exhaust his administrative remedies because he did not file any formal or informal grievances pertaining to his November 14, 2022, cell extraction. Motion at 6. Defendants acknowledge that Plaintiff filed one direct emergency grievance (log # 22-6-35079) regarding this incident, but they argue that effort could not exhaust his administrative remedies because officials denied Plaintiff's direct grievance, finding it "was not a grievance of emergency nature." *Id.* at 6-7. In support of their Motion, Defendants provide the declaration of the FDOC's informal grievance coordinator, C. Davis-Cotton; the declaration of the FDOC's formal grievance coordinator, Phyllis Rodriguez; the declaration of the FDOC's bureau chief of policy management and inmate appeals, Alan McManus; a summary printout of the informal, formal, and appeal grievances Plaintiff filed between November 4, 2022, and April 4, 2023; and Plaintiff's direct emergency grievance (log # 22-6-35079) and the Secretary's response thereto. *See* Docs. 25-1, 25-2.

In response, Plaintiff contends he "filed numerous grievances at the informal and formal levels between November 15, 2022 to November 22, 2022" but "most of the grievances that were filed were lost, misfiled, not processed, or otherwise thrown away." Doc. 26 at 3, 4; Doc. 19 at 7. Plaintiff also alleges that his direct emergency grievance (log # 22-6-35079) was also sufficient to

5

exhaust his claims as it "was denied because the subject of the grievance was previously referred to the Office of the Inspector General [(OIG)]." Doc. 26 at 3. According to Plaintiff, if his direct emergency grievance (log # 22-6-35079) was not sufficient or improperly filed, officials would have returned the grievance without action and informed him to resubmit his grievance at the appropriate level. *Id.* at 3-4. He alleges that since the Secretary denied the grievance and mentioned that the issue had been referred to the OIG, there was nothing more he could do to satisfy the exhaustion requirement.

The PLRA requires that Plaintiff exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). But Plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint[]." *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" *Id.*

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir.

2008); *see also Jones*, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford*, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing *Jones*, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. *Woodford*, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Id.* at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id.*

In *Ross v. Blake*, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy

to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id.* Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id.* at 1082–83; *see also id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). And "[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

State law "determines what steps are required to exhaust." *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones*, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. *Dimanche*, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. *See* Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. *See id.* § 33-103.011(4).

*Pavao*, 679 F. App'x at 824.

However, the ordinary three-step procedure does not always apply. For example, an inmate may skip the informal and formal grievance steps and file a direct emergency grievance with the Office of the Secretary, if the issue involves an emergency, reprisal, protective management, admissible reading

material, release date calculations, banking issues, sexual abuse committed by the warden, or HIPAA violations. Fla. Admin. Code r. 33-103.007(3)(a). When a prisoner files a direct emergency grievance with the Secretary, he must do so "within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code r. 33-103.011(d).

Here, accepting Plaintiff's view of the facts as true, the Court finds dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of *Turner*. Thus, the Court proceeds to the second step of the two-part process where the Court considers Defendants' arguments about exhaustion and makes findings of fact.

In resolving those disputes, the Court finds that the evidentiary material shows Plaintiff did not file an informal or formal grievance regarding the November 16, 2022, events, and thus he did not complete the FDOC's typical three-step grievance procedure. *See* Doc. 25-1. But the evidentiary material also shows that on November 16, 2022, Plaintiff submitted to the Secretary a "direct" "emergency" grievance (log # 22-6-35079), under Fla. Admin. Code R. 33-103.007, which contained allegations involving the November 14, 2022, use of force and failure to intervene. Doc. 25-2 at 6-7. On December 5, 2022, the Secretary's Office responded to the direct grievance as follows:

> Note: This grievance is not accepted as a grievance of an emergency nature.

10

> Your appeal has been reviewed and evaluated. The
> subject of your grievance was previously referred to
> the Office of the Inspector General. It is the
> responsibility of that office to determine the amount
> and type of inquiry that will be conducted. This
> inquiry/review may or may not include a personal
> interview with you. Upon completion of this review,
> information will be provided to appropriate
> administrators for final determination and handling.
>
> As this process was initiated prior to the receipt of
> your appeal, your request for action by this office is
> denied.

Doc. 25-2 at 5.

Defendants argue that because "an emergency [was] not found to exist,"
Plaintiff's direct grievance did not exhaust his administrative remedies.
Motion at 11. In support of that assertion, Defendants rely in the declaration,
of McManus, in which he explains:

> In appeal #22-6-35079, Inmate Blake . . . filed a direct
> emergency appeal grieving wrongful acts of institution
> staff. Appeal #22-6-35079 was properly denied because
> it was not a grievance of emergency nature. Further,
> appeal #22-6-35079's denial was not a final decision on
> the merits because of a pending Office of the Inspector
> General investigation. As such, appeal #22-6-35079's
> denial indicates this by including the relevant
> language "[u]pon completion of this review,
> information will be provided to the appropriate
> administrative for a final determination and
> handling."

Doc. 25-2 at 1. Plaintiff, however, argues that by denying his emergency
grievance (log # 22-6-35079) and omitting instructions to resubmit at the

institutional level in light of the OIG's investigation, he properly exhausted his claims because he would have just received the same response if he resubmitted at the informal grievance level. Doc. 26 at 4. The Court agrees.

In *Joseph v. Gorman*, No. 4:11cv34-MP-CAS, 2012 WL 4089012, at *6 (N.D. Fla. Mar. 12, 2012), *report and recommendation adopted by* 2012 WL 4088945, at *1 (N.D. Fla. Sept. 17, 2012), the court considered a similar response to a direct emergency grievance filed under identical circumstances and found the plaintiff's direct grievance exhausted the grievance process. Notably, the court found, "A response that *denies* a grievance appeal because the matter is already under investigation, as opposed to returning it without action or finding it to be in non-compliance, must be considered exhaustion of administrative remedies. At that point, there was nothing further for Plaintiff to do." *Joseph*, 2012 WL 4089012, at *6. Likewise, in *Smith v. Williams*, 3:23cv5661/TKW/ZCB, 2024 WL 4438320, at *3 (N.D. Fla. Sept. 9, 2024*), report and recommendation adopted by* 2024 WL 4434798, at *1 (N.D. Fla. Oct. 7, 2024), the court again considered an identical response to a direct grievance and explained:

> Plaintiff filed a direct grievance . . . with the FDOC Secretary/Central Office. The Secretary/Central Office did not return that grievance without action or find that it was procedurally noncompliant. Instead, the Secretary/Central Office "*reviewed and evaluated*" the grievance and then "*denied*" it because the matter had been referred to the OIG. Although

12

Defendants argue that Plaintiff's grievance should have been returned because it was procedurally defective, the fact is that it was not. Instead, the Secretary/Central Office "*reviewed and evaluated*" the grievance. And the Eleventh Circuit has made clear that "district courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule." *Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018). Thus, the fact that the Secretary/Central Office should have or could have returned Plaintiff's direct grievance as procedurally improper is irrelevant to the exhaustion issue because the prison officials did not return the direct grievance as procedurally improper.

Moreover, once Plaintiff received the response from the Secretary/Central Office indicating that the matter had been referred to the OIG, there was nothing more for Plaintiff to do.

*Smith*, 2024 WL 4438320, at *3 (record citations omitted).

Here, the Secretary's response indicates Plaintiff's direct emergency grievance (log # 22-6-35079) was "reviewed and evaluated" and then "denied" because the matter had been referred to the OIG. The Secretary also did not advise Plaintiff that he needed to resubmit his grievance at the appropriate level to be considered. Based on the Secretary's response, there were no further actions Plaintiff needed to take to exhaust his administrative remedies. And thus, Defendants' Motion is due to be denied as to their exhaustion argument.

### Compensatory Damages

Defendants also argue that Plaintiff is not entitled to compensatory damages under 42 U.S.C. § 1997e(e) because he has not alleged that he

13

suffered more than *de minimis* physical injuries resulting from Defendants' actions. Motion at 11-17.

Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." To satisfy § 1997e(e), a prisoner must assert a physical injury that is more than *de minimis*. *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015). But the physical injury need not be significant. *See Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x 555, 557 (11th Cir. 2014).

Here, Plaintiff complains about a large laceration above his left eye that required nine stitches as well as another smaller laceration on his face that required Dermabond. He contends that he now has several scars on his face, arms, and shoulders. Taking those allegations as true, the Court finds Plaintiff asserts a physical injury greater than *de minimis*. Thus, the Motion is denied to the extent that Defendants assert Plaintiff's request for compensatory damages is precluded under § 1997e(e).

### Punitive Damages

Defendants also argue that Plaintiff's request for punitive damages must be dismissed because it is statutorily barred. Motion at 17. According to Defendants, 18 U.S.C. § 3626(a)(1)(A) precludes punitive damages in all civil

14

rights cases because such damages are "prospective relief." *Id.* In support of their contention, Defendants assert that punitive damages "are never necessary to correct a violation of a federal right." *Id.* at 21. They also contend that even if an award of punitive damages is necessary to correct such a legal violation, that award could not satisfy the PLRA's "stringent limitations" as the relief is neither "narrowly drawn" nor "the least intrusive means necessary to correct the violation of the Federal right." *Id.* at 23-24.

Section 3626(a)(1)(A) provides:

> (1) Prospective relief. – (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). Defendants are correct that punitive damages are considered "prospective relief" under § 3626. *See Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002) (holding "punitive damages are prospective relief"), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015)). But their argument that punitive damages, as "prospective relief" under § 3626, are precluded in prisoner civil rights actions is wholly misplaced.

Indeed, they cite *Johnson* as their primary support for this notion; but in *Johnson,* the court did not hold that punitive damages were unavailable under § 3626 for § 1983 cases. Instead, in *Johnson*, the Eleventh Circuit clarified, in the context of a § 1983 civil rights case, that § 3626(a)(1)(A) merely provides the framework for awarding punitive damages. *Id.* at 1325. The court explained "a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case . . . [and] that such awards should be imposed against no more defendants than necessary to serve that deterrent function and that they are the least intrusive way of doing so." *Id.*

While the Court is unaware of an Eleventh Circuit case that has addressed Defendants' specific argument here, the Court cannot disregard the Eleventh Circuit's long-standing recognition that punitive damages are available in prisoner civil rights actions. Indeed, the Eleventh Circuit has held that 42 U.S.C. § 1997e(e) permits claims for punitive damages for § 1983 claims without a physical injury requirement. *Hoever v. Marks*, 993 F.3d 1353, 1364 (11th Cir. 2021).[3] And it has held "[p]unitive damages are appropriate in § 1983 cases 'where a defendant's conduct is motivated by evil intent or involves

---

[3] In <u>Hoever</u>, the Eleventh Circuit declined to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626. <u>Hoever</u>, 993 F.3d at 1364 n.5.

callous or reckless indifference to federally protected rights.*" Barnett v. MacArthur*, 715 F. App'x 894, 905 (11th Cir. 2017). Also, the Eleventh Circuit Civil Pattern Jury Instructions on § 1983 damages include an instruction on awarding punitive damages. *See* Eleventh Circuit Pattern Jury Instruction, Civil Cases, Civil Rights – 42 U.S.C. § 1983 Claims – Damages § 5.13.

The Court also finds persuasive other district court decisions explicitly finding that § 3626(a)(1)(A) does not preclude an award of punitive damages in prisoner civil cases. *See, e.g.*, *Brown v. Semple*, No. 3:16cv376, 2018 WL 4308564, at *14 (D. Conn. Sept. 10, 2018) (collecting cases); *Douglas v. Byunghak Jin*, No. 11-0350, 2014 WL 1117934, at *4-5 (W.D. Penn. Mar. 20, 2014) (reasoning that if Congress "intended to abolish punitive damages in all prisoner litigation under the PLRA, it would have done so directly, and in much plainer terms").[4] Thus, the Court declines to find that § 3626 precludes a request for punitive damages in this § 1983 action, and Defendants' Motion is denied on this issue.

---

[4] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

*Eighth Amendment and Qualified Immunity*

Defendants argue that Plaintiff fails to state an excessive force or failure to intervene claim against them. Motion at 24-28. According to Defendants, the injuries Plaintiff alleges he sustained are not enough to support an excessive force claim and the application of chemical agents, without more, is not greater than *de minimis* in nature. *Id.* at 24-25. They also contend that because Plaintiff refused to exit his cell, they were allowed to use force, and immediately after the cell extraction, they provided him with a decontamination shower and medical attention. *Id.* at 27. Defendants also argue that Plaintiff fails to provide specific allegations for his failure to intervene claim. *Id.* at 28. And they assert they are entitled to qualified immunity. *Id.* at 28-32.

In *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020), the Eleventh Circuit reviewed "the principles applicable to Eighth Amendment excessive-force" claims. In doing so, the Court instructed:

> The Eighth Amendment, among other things, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. As the Supreme Court has explained, "the unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as proscribed "cruel and unusual punishment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Nevertheless, the Supreme Court has instructed that what rises to the level of an "unnecessary and wanton infliction of pain"

differs based on the type of Eighth Amendment violation alleged. *Id.*

Since [the plaintiff] asserts excessive-force . . . claims, "the core judicial inquiry" requires [the Court] to consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (citation and quotation marks omitted).[5] This standard requires a prisoner to establish two elements – one subjective and one objective: the official must have both "acted with a sufficiently culpable state of mind" (the subjective element), and the conduct must have been "objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (cleaned up).

With respect to the subjective element, "to have a valid claim on the merits of excessive force in violation of [the Eighth Amendment], the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm." *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002); *see also Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).

As for the objective component of an excessive-force violation, it focuses on whether the official's actions were "harmful enough," *Hudson*, 503 U.S. at 8, or "sufficiently serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), to violate the Constitution. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38. Instead, the Eighth Amendment prohibits force that

---

5 *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam).

> offends "contemporary standards of decency,"
> regardless of whether "significant injury is evident,"
> though the extent of injury may shed light on the
> amount of force applied or "whether the use of force
> could plausibly have been thought necessary."
> *Wilkins*, 559 U.S. at 37 (citation and internal
> quotation marks omitted).

*Id.* at 1265-66; *see also McKinney v. Sheriff*, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). In determining whether an officer's use of force was applied maliciously and sadistically for the purpose of causing harm, courts consider five distinct factors:

> (1) the extent of injury; (2) the need for application of
> force; (3) the relationship between that need and the
> amount of force used; (4) any efforts made to temper
> the severity of a forceful response; and (5) the extent
> of the threat to the safety of staff and inmates, as
> reasonably perceived by the responsible officials on the
> basis of facts known to them.

*Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Hudson*, 503 U.S. at 7). When considering these factors, courts "must also give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)).

Notably, a lack of serious injury, while not dispositive, is relevant to the inquiry. *Wilkins*, 559 U.S. at 38; <u>Smith v. Sec'y, Dep't of Corr.</u>, 524 F. App'x

511, 513 (11th Cir. 2013) (per curiam). The United States Supreme Court has

explained:

> "[T]he extent of injury suffered by an inmate is
> one factor that may suggest 'whether the use of force
> could plausibly have been thought necessary' in a
> particular situation." *Ibid.*[6] (quoting *Whitley*, *supra*,
> at 321). The extent of injury may also provide some
> indication of the amount of force applied. . . . An
> inmate who complains of a "'push or shove'" that
> causes no discernible injury almost certainly fails to
> state a valid excessive force claim. *Id.* at 9 (quoting
> *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.
> 1973)).[7]
>
> Injury and force, however, are only imperfectly
> correlated, and it is the latter that ultimately counts.
> An inmate who is gratuitously beaten by guards does
> not lose his ability to pursue an excessive force claim
> merely because he has the good fortune to escape
> without serious injury.

*Wilkins*, 559 U.S. at 37-38. The Eleventh Circuit has stated:

> A plaintiff who suffers only *de minimis* injury does not
> necessarily lack a claim for excessive force under §
> 1983. *Stephens*,[8] 852 F.3d at 1328 n.33; *Saunders v.
> Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014). However,
> the resulting injuries can be evidence of the kind or
> degree of force that was used by the officer. *See
> Crocker v. Beatty*, 995 F.3d 1232, 1251 (11th Cir.
> 2021).

--------

[6] *Hudson*, 503 U.S. at 7.

[7] *See Johnson*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

[8] *Stephens v. DeGiovanni*, 852 F.3d 1298 (11th Cir. 2017).

21

*Charles v. Johnson*, 18 F.4th 686, 700 (11th Cir. 2021).

Further, "an officer can be liable for failing to intervene when another officer uses excessive force." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000); *Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998). This liability, however, only arises when the officer is able to intervene and fails to do so. *See Keating v. City of Miami*, 598 F.3d 753, 764 (11th Cir. 2010); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1290 n.21 (11th Cir. 2011); *Brown v. City of Huntsville*, 608 F.3d 724, 740 n.25 (11th Cir. 2010) ("Because the relevant events happened so quickly, the record does not reflect any point at which [the officer] could have intervened to prevent [another officer's] use of excessive force . . . .").

Here, at this stage of the proceedings and taking Plaintiff's allegations as true, as the Court must, Plaintiff has sufficiently alleged claims of excessive force and failure to intervene under the Eighth Amendment. Although Plaintiff asserts that he at first refused to exit his cell, he alleges that once the cell extraction team entered, he made several attempts to comply but Defendants "struck" him in the head and face, "smashed" his face into the floor, and "choked" him into silence, while Defendants Covey and Young stood at his cell door and ignored his pleas for help. Doc. 19-1 at 3. He also alleges that Defendants' force resulted in several lacerations, which required stitches. Defendants' argument that they used force to restore security and quell a

disturbance is more appropriate in a motion for summary judgment, not in a

motion to dismiss. And Plaintiff's alleged injuries cannot be considered in

isolation but must be viewed in concert with his allegations of force.

Also, as to Defendants' argument that they are entitled to qualified

immunity:

> "The defense of qualified immunity completely
> protects government officials performing
> discretionary functions from suit in their individual
> capacities unless their conduct violates 'clearly
> established statutory or constitutional rights of which
> a reasonable person would have known." *Gonzalez v.
> Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting
> *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) . . . . Once it
> has been determined that the official was acting
> within his discretionary duties, the burden shifts to
> the plaintiff to show (1) that the official violated a
> constitutional right and (2) that the right was clearly
> established at the time of the alleged violation.
> *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090,
> 1099 (11th Cir. 2014). Our inquiry "can begin with
> either prong." *Morris v. Town of Lexington*, 748 F.3d
> 1316, 1322 (11th Cir. 2014).

*Marbury v. Warden*, 936 F.3d 1227, 1232-33 (11th Cir. 2019) (internal citations

modified). As stated above, Plaintiff sufficiently alleged Defendants used

excessive force and failed to intervene, violating his rights under the Eighth

Amendment. Thus, at the pleading stage, Defendant are not entitled to

qualified immunity. As such, Defendants' Motion is due to be denied on these

issues.

## IV. Defendants' Supplemental Motion to Dismiss

Defendants raise one argument in their Supplemental Motion. They contend that the Second Amended Complaint should be dismissed because Plaintiff failed to adequately disclose his litigation history. *See generally* Supplemental Motion. According to Defendants, Plaintiff failed to disclose No. 3:22-cv-846-MMH-JBT (M.D. Fla.) when answering whether he had a case dismissed based on the "three strikes rule." *Id.* at 2-4. And they assert that when listing his previous lawsuits, Plaintiff failed to disclose two additional prior cases – No. 3:23-cv-21819-LC-HTC (N.D. Fla) and 6:19-cv-72-RBD-G_K (M.D. Fla.). *Id.* at 4-5.

Under the circumstances presented and upon review of Plaintiff's litigation history, the Court is not inclined to dismiss the Second Amended Complaint for Plaintiff's failure to disclose his litigation history. First, the Court finds that Plaintiff did not fail to disclose a "strike" under 28 U.S.C. § 1915(g). Citing to Federal Rule of Civil Procedure 41(b), and without any reference to § 1915, the Court dismissed No. 3:22-cv-846 without prejudice because Plaintiff did not correct the pleading deficiencies despite being afforded an opportunity to do so. The Court then specifically noted that Plaintiff may initiate new cases if he wished to pursue any of his numerous claims. *See generally Blake*, No. 3:22-cv-846.

24

Also, while Plaintiff did not list No. 3:23-cv-21819 and No. 6:19-cv-72 when disclosing his prior cases, Plaintiff did disclose seventeen other prior cases. *See* Docs. 19 at 9-10, 19-1 at 4-8. Further, a review of No. 6:19-cv-72 shows the court dismissed that case without prejudice for Plaintiff's failure to pay the filing fee or request to proceed as a pauper within thirty days of filing and because he failed to use the standard civil rights form. *Blake*, 6:19-cv-72. And upon review of No. 3:23-cv-21819, the court did not dismiss that case until two months after Plaintiff filed his Second Amended Complaint in the instant case. *Blake*, No. 3:23-cv-21819. In sum, Plaintiff did not appear to intentionally deceive the Court or respond untruthfully about previous lawsuits challenging the conditions of his confinement. And thus, Defendants' Supplemental Motion is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.    Defendants' Motion to Dismiss (Doc. 25) is **DENIED**.

2.    Defendants' Supplemental Motion to Dismiss (Doc. 34) is **DENIED**.

3.    Defendants shall answer the Second Amended Complaint within **14 days** of the date of this Order.

4.    A separate order will enter setting case management deadlines.

**DONE AND ORDERED** in Jacksonville, Florida, on December 11, 2024.


_____
BRIAN J. DAVIS
United States District Judge



Jax-7

C:    Kevin Lamar Blake, #X83762
      Counsel of record